## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

INSTITUTE FOR ENERGY RESEARCH,

*Plaintiff*,

v.

DEPARTMENT OF THE TREASURY, *et al.*,

*Defendants.*

No. 22-cv-03653 (DLF)

## <u>MEMORANDUM OPINION</u>

Before the Court are the plaintiff's Motion for Attorney's Fees, Dkt. 22, and the defendants' Motion to Strike, Dkt. 25. For the reasons that follow, the Court will deny both motions.

### I.    BACKGROUND

Plaintiff Institute for Energy Research ("IER") submitted six Freedom of Information Act ("FOIA") requests to the Internal Revenue Service ("IRS") in the fall of 2022. *See* Mielke Decl. ¶ 10, Dkt. 23-1. The plaintiff sought correspondence between IRS employees and certain lobbyists and congressional staff members responsible for implementing the Inflation Reduction Act of 2022. *Id.* IRS received Requests 1, 2, and 3 between the end of October and mid-November 2022. *Id.* The agency acknowledged receipt of Requests 1 and 3 and denied both requests under FOIA exemption 3, for requesting statutorily exempt "third party return information." *Id.* ¶¶ 5, 7 (citing FOIA exemption 3(b)(3) and 26 U.S.C. § 6103(a)). IRS received Request 2 on November 4, 2022, but the request was lost in transmission internally before being assigned to a disclosure specialist for processing. *Id.* ¶ 6a.

IER administratively appealed the denials of Requests 1 and 3. *Id.* ¶¶ 5d–e, 7d–e. On December 1, 2022, IER counsel and IRS officials discussed the denials of Requests 1 and 3 on a conference call. *Id.* ¶¶ 5e–f, 7e–f. On the call, IER counsel clarified the scope of its requests, but the parties did not discuss the misplaced Request 2. *See id.* ¶ 6b; Compl. ¶ 30 n.1, No. 23-cv-102, Dkt. 1.

IRS received Requests 4, 5, and 6 on December 3, 2022—a few days after the conference call clarifying the scope of IER's original requests. *See* Opp'n to Fees at 6, Dkt. 23. Requests 4, 5, and 6 were identical to Requests 1, 2, and 3, except that the new requests explicitly stated that they did not seek information the agency had determined was categorically exempt from release under FOIA.[1] *See, e.g.*, Mielke Decl., Ex. D at 1, Dkt. 23-5 ("We seek correspondence on topics other than taxpayer information." (emphasis omitted)). The new requests also extended the search timeframe. *See* Mielke Decl., Ex. A–F, Dkts. 23-2–23-7.

On December 6, 2022, IER counsel emailed IRS to follow up on the December 1 conference call and to reaffirm that the requests did not seek categorically exempt information. Compl. ¶ 30 n.1, No. 23-cv-102. In that email, IER mentioned for the first time that the agency had not responded to Request 2. *Id.* Aside from a brief parenthetical reference in that email, IER did not otherwise inquire into the status of the misplaced Request 2. *See id.*; Mielke Decl. ¶ 6b.

IRS began processing Requests 4, 5, and 6 by assigning each to an IRS disclosure specialist. *Id.* ¶ 8a. IRS did not raise any objections to these requests, as they explicitly clarified that they did not seek any exempt information. On December 7, 2022, the assigned disclosure specialist discussed Requests 4, 5, and 6 with her manager. *Id.* ¶ 8b. Because IER sought the

---

[1] Each new request corresponded to a request from the first batch: Request 4 was materially identical to Request 1; Request 5 was materially identical to Request 2; and Request 6 was materially identical to Request 3. *Compare* Mielke Decl., Ex. A–C *with id.*, Ex. D–F.

emails of the IRS Chief Counsel's employees, and because IER was categorized as a "media" requester, the disclosure specialist emailed the Chief Counsel's office for advice on how to proceed searching for responsive records.  *Id*.  Also on December 7, IER filed the instant suit against defendants IRS and the Department of Treasury to compel the production of the documents sought in Request 2.[2]  On December 8th, IRS identified and notified the five Chief Counsel attorneys who were potential custodians of records responsive to Requests 4, 5, and 6.  *Id*. ¶ 8c.  IRS received service of IER's lawsuit regarding Request 2 on December 8, 2022.[3]  Stipulation, at 1, Dkt. 6.

After receiving the internal notifications about the requests, the five custodians began their searches.  Mielke Decl. ¶ 8f.  One custodian began searching on December 9, 2022.  Another began on December 12th.  *Id*.  On December 16th, a disclosure support attorney in the Chief Counsel's office prepared search memoranda about Requests 4, 5, and 6, which were then forwarded to the custodians.  *Id*. ¶ 8e.  The same day, another custodian conducted her search and submitted all her responsive records.  *Id*. ¶ 8f.  Another custodian conducted a preliminary search around this time but could not recall when exactly.  *Id*. ¶ 8f.

On January 3, 2023, IRS notified IER that the agency would not be able to provide a substantive response to Requests 4, 5, and 6 by the end of the 20 business-day response period. *Id*. ¶ 8.  The letter then invoked FOIA's 10-day statutory extension to search for and collect the requested records, which extended the deadline to January 18, 2023.  *Id*.  The letter stated that IRS

---

[2] IER later filed suits for Requests 1 and 3, *see* No. 23-cv-102, and Requests 4, 5, and 6, *see* No. 23-cv-172.  The Court consolidated these later cases with the original case regarding Request 2 under Federal Rule of Civil Procedure 42(a).  *See* Minute Order of April 26, 2023; Joint Status Report of May 5, 2023, at 1, Dkt. 14.

[3] The parties stipulated that, while the lawsuit was filed on December 7, 2022, service upon the U.S. Attorney's Office and the agency-defendants "was made on December 8, 2022."  Stipulation, at 1, Dkt. 6.

expected to provide a final response by April 3, 2023, but noted that IER would be able to file suit regarding Requests 4, 5, and 6 after the response deadline on January 18th.  *Id.*

On January 13, 2023, IER filed suit to enforce Requests 1 and 3.  *See* No. 23-cv-102.  On January 17th, another custodian began searching for records responsive to Requests 4, 5, and 6. Mielke Decl. ¶ 8f.  On January 20th, two days after the statutory deadline—which IRS previously acknowledged it would miss—IER filed suit over Requests 4, 5, and 6.  *Id.* ¶ 10.

Over the next few months, the government continued to receive, review, and process additional responsive records from the agency custodians.  *Id.*  By mid-summer of 2023, the disclosure specialist received the final batch of potentially responsive records.  *Id.* ¶ 9. By mid-September, IRS had reviewed 847 documents consisting of 3,455 pages and determined none of the records were responsive.  *See* Joint Status Report of September 13, 2023, Dkt. 17.  In November, IRS completed reviewing a total of 1,471 records—consisting of 5,638 pages— identified as potentially responsive.  *See* Joint Status Report of November 13, 2023, Dkt. 18.  Of those records, IRS determined only 44 were responsive—25 of which it released in full.  *Id.*  The Department of Energy and Department of Treasury "had equities" in the remaining potentially responsive records, which delayed processing while those agencies reviewed the records and provided their views to IRS.  *Id.* at 1–2; Mielke Decl. ¶ 9.

By January 16, 2024, IRS completed processing after it heard back from the other agencies and produced all responsive, non-exempt records.  Mielke Decl. ¶ 9–10.  In total, IRS produced 44 responsive records and four nonresponsive public comments that were attached to responsive emails.  *Id.* ¶ 11.  After production was completed, the parties agreed that the consolidated cases were moot, leaving only the issue of potential attorney's fees for the litigation of the consolidated lawsuits.  Stipulation, at 1, Dkt. 20.

IER filed the instant fees motion on April 19, 2024, attaching IRS's Determination Letter, the Fitzpatrick Matrix and an associated declaration, and declarations from each of IER's attorneys detailing their work experience and hours for this matter. *See* Dkts. 22-1–22-5. The defendants filed their opposition a few weeks later. *See* Opp'n to Fees. IER filed a reply shortly thereafter, attaching two declarations from counsel to bolster its fees arguments. *See* Reply, Dkt. 24; Horner Declaration, Dkt. 24-1; Hardin Declaration, Dkt. 24-2. The defendants filed a motion to strike portions of the declarations attached to the reply, and in the alternative to file a sur-reply. *See* Mot. to Strike or File Sur-Reply, Dkt. 25. Specifically, the defendants move to strike paragraphs six through eight of the Horner Declaration, which provide purportedly new information about the Inflation Reduction Act to argue that the released records were for the public benefit. Horner Declaration ¶¶ 6–8. The defendants also move to strike paragraphs five and six in the Hardin Declaration, which offer counsel's opinion, based on his experience litigating FOIA cases, that the underlying lawsuits here caused IRS to release the requested records. Hardin Declaration ¶¶ 5–6. The Court granted the government's motion to file a sur-reply, *see* Minute Order of May 30, 2024, and reserved judgment on the motion to strike pending IER's opposition, *see* Opp'n to Mot. to Strike, Dkt. 27.

## II.    LEGAL STANDARDS

To receive attorney's fees under FOIA, a plaintiff must be both (1) eligible for and (2) entitled to them. *McKinley v. Fed. Housing Fin. Agency*, 739 F.3d 707, 710 (D.C. Cir. 2014). A plaintiff is eligible for fees if it "substantially prevailed" in the litigation. 5 U.S.C. § 552(a)(4)(E)(i). And a plaintiff "substantially prevailed" in the litigation if it "obtained relief" through either: "(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not

insubstantial." *Id.* § 552(a)(4)(E)(ii).  Relief avenue (II) permits the "catalyst theory" of eligibility when a plaintiff proves "its lawsuit substantially caused the government to release the requested documents before final judgment." *Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 96 (D.C. Cir. 2020) (internal quotation marks omitted).  The entitlement inquiry is governed by four non-exclusive factors: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents." *McKinley*, 739 F.3d at 711 (internal quotation marks omitted).  The Court balances these factors at its discretion.  *Morley v. CIA*, 894 F.3d 389, 391 (D.C. Cir. 2018).  And "when the four factors point in different directions, the district court has very broad discretion in deciding how to balance those factors and whether to award attorney's fees." *Id.*  When a plaintiff demonstrates it is both eligible for and entitled to attorney's fees, the Court may only award "reasonable" fees.  5 U.S.C. § 552(a)(4)(E)(i).  The plaintiff bears the burden of proof to demonstrate the reasonability of its requested fees. *Judicial Watch v. DOJ*, 878 F. Supp. 2d 225, 238 (D.D.C. 2012).

Rule 12(f) of the Federal Rules of Civil Procedure allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  It is a "drastic remed[y] that courts disfavor." *Riddick v. Holland*, 134 F. Supp. 3d 281, 285 (D.D.C. 2015) (citation omitted).  But the decision whether to strike ultimately lies within the district court's discretion.  *See Bey v. Wash. Metro. Area Transit Auth.*, 341 F. Supp. 3d 1, 11 (D.D.C. 2018).

### III.    ANALYSIS

The Court will deny the plaintiff's motion for attorney's fees because the plaintiff has not shown that its lawsuits caused the government to release the records responsive to the FOIA requests.

#### A.    Motion for Attorney's Fees

A plaintiff is eligible for fees if it "substantially prevailed" in the litigation. 5 U.S.C. § 552(a)(4)(E)(i).  The parties agree the catalyst theory provides the only possible avenue for IER to prove it "substantially prevailed."  *See* Mot. for Fees at 3–4; Opp'n to Fees at 17–18.  Under the catalyst theory, a plaintiff must prove that the "institution and prosecution of the litigation cause[d] the agency to release the documents obtained during the pendency of the litigation."  *Church of Scientology of California v. Harris*, 653 F.2d 584, 587 (D.C. Cir. 1981); *see Grand Canyon Tr.*, 947 F.3d at 95.  But the "mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation."  *Grand Canyon Tr.*, 947 F.3d at 95.  Instead, the plaintiff bears the burden of proving "that it is more probable than not that the government would not have performed the desired act absent the lawsuit."  *Id.* (quoting *Pub. Citizen Health Rsch. Grp. v. Young*, 909 F.2d 546, 550 (D.C. Cir. 1990)).  To satisfy that causation burden, the plaintiff must bring to bear "something more than *post hoc*, *ergo propter hoc*."  *Church of Scientology*, 653 F.2d at 588.  "Absent any evidence on the matter," the Court's "natural inference is that the [agency] was simply responding to the [plaintiff's] request," even if belatedly.  *Pyramid Lake Paiute Tribe of Indians v. DOJ*, 750 F.2d 117, 120 (D.C. Cir. 1984)

The administrative and litigation timeline demonstrates that IRS initiated its search for records responsive to Requests 1, 2, and 3 in response to IER's second batch of FOIA requests, not because of any litigation.  After IER submitted its first batch of requests in mid-November

2022, IRS took prompt action—aside from on Request 2, which was lost in transmission. *See* Mielke Decl. ¶ 10. After the agency initially denied those requests, the parties participated in a conference call where IER clarified the scope of its requests before submitting a materially identical set of requests, which IRS received on December 3rd. *Id.* ¶ 6b; Complaint, No. 23-cv-102, ¶ 30 n.1; Opp'n to Fees at 6. IER's Requests 4, 5, and 6 were materially identical to Requests 1, 2, and 3, except that the new batch provided a longer time frame and explicitly stated that IER did not seek any information that IRS had determined was categorically exempt. *See* Mielke Decl., Exs. A–F. IRS immediately began processing the second batch of requests. For example, the record demonstrates that on December 7, the IRS disclosure specialist assigned to the requests had already discussed the IER's second batch of requests with her manager and had emailed the Chief Counsel's office about how to proceed with the search. Mielke Decl. ¶ 8b. On December 8th, IRS identified and notified the five IRS attorneys who were potential custodians of records responsive to Requests 4, 5, and 6. *Id.* ¶ 8c. Because Requests 4, 5, and 6 were materially identical to IER's initial batch of requests, IRS's ongoing search process was responsive to both sets of requests.

The agency's document custodians continued their search throughout December 2022 and January 2023; and throughout 2023, IRS continued locating, receiving, and processing potentially responsive records. *Id.* ¶ 9. By mid-November 2023, IRS had completed its review of thousands of pages potentially relevant records and determined that only a few documents were responsive. Joint Status Report of November 13, 2023. IRS also identified and processed potentially responsive records held by other agencies. *Id.* In mid-January 2024, IRS completed its production process, and the parties do not dispute that IRS conducted a diligent search process and produced all responsive, non-exempt records. *Id.* ¶ 9–10.

IRS was not served with the complaint regarding Request 2, and did not receive notice of that lawsuit, until December 8th, *see* Stipulation at 1—*after* the agency had already begun its search for records related to Request 2. Likewise, IER filed its next set of lawsuits—regarding Requests 1 and 3—in mid-January 2023, weeks after IRS had already begun searching for, receiving, and processing, records potentially responsive to those requests. Because IRS's search process "began before the initiation of [any] lawsuit," IER cannot assert that filing suit catalyzed the agency's response. *Env't Integrity Project v. EPA*, 316 F. Supp. 3d 320, 328 (D.D.C. 2018) (denying fees motion relying on catalyst theory).

The record shows that the catalyst for IRS releasing the requested records was not IER's litigation, but rather IER's resubmission of its FOIA requests after rectifying the overbroad scope of its initial submissions. Although the D.C. Circuit has not ruled out that "a sudden acceleration of production" may prove causation, *Grand Canyon Tr.*, 947 F.3d at 97–98 (internal quotation marks omitted), courts in this district routinely hold that "a plaintiff's lawsuit was not the catalyst for an agency's delayed release of documents when the defendant made a good-faith effort to search for information and respond to the FOIA request, and the ultimate release was the result of a diligent, ongoing process that began before the initiation of the lawsuit," *Env't Integrity Project*, 316 F. Supp. 3d at 328; *see also, e.g.*, *Calypso Cargo Ltd. v. U.S. Coast Guard*, 850 F. Supp. 2d 1, 5 (D.D.C. 2011) (holding catalyst theory not satisfied where agency had begun processing the request shortly after receiving it and before plaintiff filed the complaint); *Bigwood v. Def. Intelligence Agency*, 770 F. Supp. 2d 315, 321 (D.D.C. 2011) (holding no causal nexus to satisfy catalyst theory where agency searched for and reviewed documents prior to litigation, even though production was "extraordinarily delayed"). That is exactly what happened here. After IRS denied the initial batch of requests, the parties resolved their dispute over exempt information through the

administrative process and IER resubmitted its requests with clarifying language.  IRS promptly began processing IER's amended requests and continued to search for and review potentially responsive records *before* IER filed its lawsuits.  "These actions reflect a good faith effort to respond to [IER's] request and a diligent ongoing process that began before the initiation of the lawsuit." *Env't Integrity Project*, 316 F. Supp. 3d at 328.

Even if the record timeline were less clear, the Court would still find that IER has failed to meet its evidentiary burden to prove that litigation catalyzed the agency response.  The relevant inquiry is "whether hard evidence—beyond temporal proximity—supports the inference that the plaintiff's lawsuit caused the document release or other requested relief."  *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 206 (D.D.C. 2016).  IER's argument relies solely on temporal proximity—it argues that "the numerous releases of documents in installments came only after this litigation had begun," Mot. for Fees at 4—which is squarely foreclosed by precedent, *Pyramid Lake Paiute Tribe of Indians*, 750 F.2d at 120 (holding "[a]bsent any evidence on the matter," the court's "natural inference is that the [agency] was simply responding to the [plaintiff's] request"); *see also Grand Canyon Tr.*, 947 F.3d at 97 ("[T]he mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation.").  Even where a government agency "release[s] some documents after [a plaintiff] filed the complaint as a purely chronological matter, it is also clear beyond cavil that the catalyst method requires more." *Conservation Force*, 160 F. Supp. 3d at 206.  Here, IER fails to show anything "more"—its briefs do not highlight any record evidence, beyond the mere filing of the complaint and subsequent release of documents, to demonstrate that its litigation catalyzed IRS's search process for responsive documents.  And the Court "is under no obligation to sift through the record" for evidence of a catalyst. *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 154 (D.C. Cir. 1996); *see Davis*

10

*v. Pension Ben. Guar. Corp.*, 734 F.3d 1161, 1166–67 (D.C. Cir. 2013) ("In this circuit, it is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." (cleaned up)).

Nor do IER's late-submitted declarations remedy these evidentiary defects. In particular, the Hardin declaration, which the Court will not strike from the record,[4] does not offer any facts drawn from the administrative or litigation record in *this* case—it contains only the conclusory assertion that "[b]ecause [IER] submitted multiple requests and preserved its rights in litigation on all requests, [IER] ultimately achieved the release of the records it sought in far less time than it would have." Hardin Decl. at ¶¶ 5–6. Hardin's opinion, solely "based upon [his] years of experience in FOIA cases," is unsupported by the administrative record here. IRS offers evidence that its disclosure specialist had already sent emails and initiated the search and review process for the relevant records before IRS received notice of the earliest-filed lawsuit on December 8, 2022. *See* Mielke Decl. ¶ 8b. The Court will not credit Hardin's speculative and conclusory opinion when the evidence shows that IRS "exercised due diligence to ensure the request was processed." *Env't Integrity Project*, 316 F. Supp. 3d at 328.

---

[4] Motions to strike are "disfavored" and "drastic remed[ies]." *Uzylan v. Solis*, 706 F. Supp. 2d 44, 51 (D.D.C. 2010). "[C]ourts will grant such a motion only if the [materials] sought to be stricken . . . are also prejudicial or scandalous." *Id.* at 52 (internal quotation marks omitted). "At the outset, it is not clear that the Federal Rules authorize this Court to strike a portion of a reply brief in support of a motion for attorney's fees." *Elec. Priv. Info. Ctr. v. DHS*, 999 F. Supp. 2d 61, 77 (D.D.C. 2013) (noting Rule 12(f) refers to "pleadings," which does not include motions or other documents attached thereto); *see Henok v. Chase Home Fin., LLC*, 925 F. Supp. 2d 46, 52–53 (D.D.C. 2013). But the Court need not resolve this question because it would not exercise any such authority. *See id.* Allowing the challenged evidence to remain on the record will not prejudice the government, and because the Court "makes no use of . . . the documents to which the [government] objects," *Ali v. Dist. of Columbia Gov't*, 810 F. Supp. 2d 78, 84 n.5 (D.D.C. 2011), it need not address their admissibility. Accordingly, the Court will deny the defendants' motion to strike.

The Court finds no other basis to overcome the presumptive "inference" that IRS responded in good faith to the plaintiff's FOIA requests. *See Pyramid Lake Paiute Tribe of Indians*, 750 F.2d at 120. Because the record demonstrates that IRS initiated its search and review process before any action was filed, IER cannot prove that its litigation catalyzed the agency's response. Accordingly, the Court finds that IER has failed to prove eligibility for attorney's fees and it will deny the plaintiff's motion.

## CONCLUSION

For the foregoing reasons, the plaintiff's Motion for Attorney's Fees, Dkt. 22, and the defendants' Motion to Strike, Dkt. 25, are denied. A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

December 16, 2024